IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:24-cv-144-ECM |
| | ) | [WO] |
| BRADLEY MARTIN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Joe Hand Promotions, Inc. (the "Plaintiff") moves for entry of a default judgment

against Bradley Martin (the "Defendant" or "Martin"). (Doc. 38).[1]  The Defendant has not

responded in opposition to the motion or otherwise appeared in this matter.   Upon

consideration, and for good cause, the motion is due to be GRANTED.

## I.  BACKGROUND

The Plaintiff is a Pennsylvania-based company that licenses and distributes

audiovisual presentations of sporting events to "non-residential establishments" such as

"bars, restaurants, clubhouses, [and] shops." (Doc. 1 at 2–3).  It entered into an agreement

with Zuffa, LLC, ("Zuffa") the owner of the copyright for "Ultimate Fighting

Championship© 259: Jan Blachowicz vs. Israel Adesanya" (the "Program"), a mixed

martial arts event that took place on March 6, 2021. (*Id.* at 2).  That agreement gave the

Plaintiff "the exclusive rights to permit commercial businesses . . . to access the

---

[1] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

broadcast." (*Id.*).  The Plaintiff sold this access right to retail establishments at a rate determined by the establishment's occupancy.  For example, the standard rate for a business that had a maximum occupancy of fifty persons to access the broadcast was $866, whereas the rate for a business with a capacity of five-hundred persons was $4,330. (Doc. 38-7).  The Plaintiff's contract with Zuffa permitted it to "assert claims . . . against unauthorized non-residential [or] commercial establishments" that illegally obtained the Program. (*See* doc. 38-8 at 4).

The Plaintiff brought this suit on March 5, 2024, against two defendants:  RANGE 231 N., LLC ("RANGE"), an Alabama business that operated a commercial establishment in Montgomery, Alabama; and Martin, who the Plaintiff alleges "was an officer, director, shareholder, member[,] and/or principal" of RANGE, "had a right and ability to supervise the activities of" RANGE's Montgomery establishment, and "had an obvious and direct financial interest in the activities of" that establishment. (Doc. 1 at 2–3).  The Plaintiff alleges that RANGE and Martin accessed the broadcast without obtaining a license and "exhibited the Program for the commercial purpose of attracting paying customers, patrons, members, and guests, thereby wrongfully benefiting financially by infringing [the] Plaintiff's rights." (*Id.* at 4).

The Plaintiff brought claims against RANGE and Martin for violations of the Communications Act, 47 U.S.C. §§ 553, 605 (Count I) and for copyright infringement (Count II).  The Plaintiff properly served Martin (*see* docs. 11, 12) and moved for entry of default against him under Federal Rule of Civil Procedure 55(a) (*see* doc. 14), which the Clerk of the Court granted (doc. 20).  However, after twice trying and failing to properly

serve RANGE and secure a default against it (*see* doc. 31), the Plaintiff voluntarily dismissed his claims against RANGE without prejudice (doc. 35).  The Plaintiff now moves for default judgment against Martin, the sole remaining Defendant. (Doc. 38).  Because he has failed to appear or otherwise defend, the Plaintiff's motion for default is ripe for review.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

It is well-settled that a "district court has the authority to enter default judgment for failure . . . to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).  An entry of default must precede an entry of default judgment. When a defendant "has failed to plead or otherwise defend" against claims, and the plaintiff demonstrates that failure, the clerk must enter the defendant's default. FED. R. CIV. P. 55(a). After entry of default, the plaintiff "must apply to the court for a default judgment." FED. R. CIV. P. 55(b)(2).

A default judgment may be entered where a defendant "has failed to plead or otherwise defend as provided by these rules." FED. R. CIV. P. 55(a).  However, the Eleventh Circuit has a "strong policy of determining cases on their merits" and "therefore view[s] defaults with disfavor." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).  Default judgments are appropriate only when the adversary process has been halted

because of an unresponsive party. *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F. Supp. 2d 193, 195 (D.D.C. 2006).[2] The court may, but is not required to, hold a hearing before entering a default judgment. Further, "[g]iven its permissive language, Rule 55(b)(2) does not require a damages hearing in every case." *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015).

A defendant's failure to appear and an entry of default by the Clerk do not automatically entitle the plaintiff to default judgment. Because Courts must look to the contents of the Complaint to determine liability, entry of default is not "an absolute confession" but rather "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004); *see also Giovanno*, 804 F.3d at 1366 ("When a defendant defaults, he 'admits the plaintiff's well-pleaded allegations of fact.'") (quoting *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1106 (11th Cir. 2015) (quotation marks omitted)); *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) ("The defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief.").

Therefore, "the allegations must be well-pleaded in order to provide a sufficient basis for the judgment entered." *De Lotta v. Dezenzo's Italian Rest., Inc.*, 2009 WL 4349806, at *2 (M.D. Fla. 2009) (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)). A complaint is "well-pleaded" when it

---

[2] Here and elsewhere in this Order the Court cites nonbinding authority. While the Court recognizes that these cases are nonprecedential, the Court finds them persuasive.

satisfies the requirements set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Specifically, "the factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

## IV. DISCUSSION

In its brief in support of its motion for default judgment, the Plaintiff represents that it is "solely seek[ing] damages under 47 U.S.C. § 605 of the Communications Act."[3] (Doc. 38-1 at 5 n.1). The Court cabins its analysis accordingly, looking first to whether § 605 liability has been established and then to the matter of damages and attorney fees.

### A.    Liability

Section 605 "prohibits the unauthorized third[-]party reception of satellite transmissions intended for fee-paying subscribers." *Showtime/The Movie Channel, Inc. v. Covered Bridge Condo. Ass'n, Inc.*, 881 F.2d 983, 988 (11th Cir. 1989), *vacated on other grounds by* 895 F.2d 711 (11th Cir. 1990); *see also DIRECTV, Inc. v. Trawick*, 359 F. Supp. 2d 1204, 1207 n.6 (M.D. Ala. 2005) ("Although the statute uses the term 'radio,' all courts construing § 605(a) have assumed that the statute also applies to transmissions and interception of satellite cable programming."). To succeed on its § 605 claim, the Plaintiff must establish that the Defendant (1) "intercepted the program," (2) "did not pay for the

---

[3] The Plaintiff noted that by its motion for default judgment, it is seeking "a full and final judgment against [the] Defendant." (Doc. 38-1 at 4). In addition to jettisoning Count II, this approach also excises the Plaintiff's 47 U.S.C. § 553 claim—which is a discrete cause of action from that created by § 605. *See Innovative Sports Mgmt., Inc. v. Rustica De Serrano Villagra G. Y Villagra F. LLC*, 2024 WL 5167662, at *2 (S.D. Fla. June 21, 2024). The Court presumes that this was done because, though both causes of action have identical elements, *see id.*, a plaintiff is entitled to recover only under one or the other. *See Zuffa, LLC v. Al-Shaikh*, 2011 WL 1539878, at *5 (S.D. Ala. Apr. 21, 2011) (collecting cases).

right to receive the transmission," and (3) "displayed the program to patrons of [his] commercial establishment." *Joe Hand Promotions, Inc. v. Sports Nut, LLC*, 2017 WL 6492546, at *2 (N.D. Ala. Dec. 19, 2017) (quotation omitted)).  To hold the Defendant "vicariously liable in his individual capacity as an officer, director, shareholder and/or principal of [RANGE] under 47 U.S.C. § 605, [the] Plaintiff must show that [the Defendant] had a 'right and ability to supervise the violations, and that he had a strong financial interest in such activities.'" *J&J Sports Prods., Inc. v. Arboleda*, 2009 WL 3490859, at *5 (M.D. Fla. Oct. 27, 2009) (quoting *J&J Sports Productions, Inc. v. Ribeiro,* 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008)).

The Plaintiff alleges that it did not authorize the Defendant to exhibit the Program at RANGE but that he nevertheless did. (Doc. 1 at 3–4).  Further, Plaintiff alleges that the Defendant unlawfully obtained access to the Program and exhibited it at RANGE "willfully" and "for the commercial purpose of attracting paying customers, patrons, members, and guests, thereby wrongfully benefiting financially by infringing Plaintiff's rights." (*Id.* at 4).

The Plaintiff also alleges that the Defendant, by virtue of his ownership with RANGE, "had the right and ability to supervise and an obvious direct and financial interest in the activities of [RANGE] at all relevant times." (*Id.* at 5).  Because these facts—which the Defendant has admitted by defaulting—are sufficient to establish his individual liability under § 605, Plaintiff's motion is due to be granted. *See Sports Nut*, 2017 WL 6492546, at *3 (finding liability established under § 605 where it was admitted "that the Defendants

intercepted the event," "did not pay for the license to receive the [e]vent," and "showed the [e]vent to patrons").

## B.    Damages

Section 605 allows a plaintiff to choose between actual and statutory damages. 47 U.S.C. § 605(e)(3)(C)(i).  If a plaintiff elects statutory damages, the Court may award between $1,000 and $10,000 for each violation of § 605(a), "as the [C]ourt considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).  The Court may also award enhanced damages up to $100,000 for each violation of § 605(a) upon a finding "that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).  Courts awarding enhanced damages endeavor to adequately deter unlawful behavior without irreparably damaging a defendant's business. *See Joe Hand Promotions, Inc. v. McBroom*, 2009 WL 5031580, at *5 (M.D. Ga. Dec. 15, 2009) ("'[C]ourts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct[] but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense.'" (quoting *J&J Sports Prods., Inc. v. Tu,* 2008 WL 4833116, at *2 (N.D. Ill. Oct. 29, 2008))); *Arboleda*, 2009 WL 3490859, at *7 ("The Court must strike a balance between deterring other incidents of piracy by these Defendants and others, and not making the award such that it will put a small business out of business.").

Plaintiff seeks $3,832 in statutory damages, which it arrived at by adding the total licensing fee the Defendant would have paid to access the Program ($3,000) and the estimated amount RANGE collected in cover charges when it exhibited the Program

($832). (Doc. 38-1 at 9). Courts frequently award the amount the defendant would have paid to lawfully access a program when assessing statutory damages, and this Court sees no reason to diverge from that practice. *See, e.g.*, *Sports Nut*, 2017 WL 6492546, at *4. However, courts generally do not add approximate cover charges collected by a defendant to this award. *See, e.g.*, *Zuffa, LLC v. Al-Shaikh*, 2011 WL 1539878, at *7 (S.D. Ala. Apr. 21, 2011) (discussing several methods of calculating statutory damages). The Court exercises its discretion to limit the award of statutory damages to $3,000.[4] *See* 47 U.S.C. § 605(e)(3)(C)(i)(II) (stating that statutory damages may be awarded "as the court considers just"); *Al-Shaikh*, 2011 WL 1539878, at *7 ("Determining the appropriate level of damages (within the ranges provided by the statute) is left to the discretion of th[e] [c]ourt.").

The Court also finds that enhanced damages are proper. By virtue of his default, the Defendant has admitted that he willfully and unlawfully accessed the Program and exhibited it at RANGE in order to "attract[] paying customers"—that is, for his own financial gain. (Doc. 1 at 4); *see Sports Nut*, 2017 WL 6492546, at *4 ("[Broadcasting an event] without . . . authorization is enough to show a willful violation committed for the purpose of direct or indirect financial gain." (alterations in original) (quotation omitted)).

---

[4] This decision is supported by the fact that there is insufficient record evidence to show what cover charge, if any, was collected by RANGE on the night of the Program. Though the Plaintiff's brief in support of its motion for default judgment references a cover charge, (*see* doc. 38-1 at 4), the brief itself is not evidence. *Cf. Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011) ("[At default judgment,] [b]esides the pleadings, a court may also consider evidence presented in the form of an affidavit or declaration." (citation omitted)). It appears that the Plaintiff intended but neglected to attach an affidavit to establish the amount of any cover charge collected by RANGE. The Court granted the Plaintiff leave to file that affidavit, but it elected not to do so. (*See* doc. 41).

Moreover, the Plaintiff attached to its motion screenshots of RANGE's and the Defendant's Facebook pages advertising the unlawful showing, (doc. 38-3 at 2–3; *see also* doc. 38-2 at 1). *See Arboleda*, 2009 WL 3490859, at *7 (noting that, in determining whether enhanced damages are proper, courts look to whether the illegal broadcast was advertised). The Plaintiff also submitted Facebook screenshots indicating that RANGE and the Defendant have unlawfully exhibited other UFC events in the past. (*See* doc. 38-4 at 3–6; *see also* doc. 38-2 at 1).

The Plaintiff requests $15,328 in enhanced damages, or four times the amount it requests in statutory damages. (Doc. 38-1 at 12, 14). The Court finds a multiple of four times the amount of statutory damages reasonable—other courts have awarded enhanced damages of three times the statutory damages where there was no evidence that the defendants advertised for the event, charged a cover fee, or put on additional unlawful screenings. *See, e.g.*, *Al-Shaikh*, 2011 WL 1539878, at *8–9; *Arboleda*, 2009 WL 3490859, at *7; *but see J&J Sports Prods., Inc. v. Spar*, 2008 WL 305038, at *4 (E.D.N.Y. Feb. 1, 2008) (awarding six times the statutory damages despite a dearth of evidence that the defendant advertised the event or collected a cover charge). Because the Court awards $3,000 in statutory damages, it correspondingly levies $12,000—four times the statutory damages—in enhanced damages. The Court is confident that this amount is sufficient to deter the Defendant from engaging in additional unlawful screenings. *See McBroom*, 2009 WL 5031580, at *5 (illustrating that enhanced damages are utilized in part for deterrence).

## C.    Attorney Fees and Costs

The Plaintiff also seeks to recover attorney fees and costs. (Doc. 38-1 at 14).  Section 605 mandates an award of reasonable attorney fees and costs when a party prevails under the Communications Act. 47 U.S.C. § 605(e)(3)(B) ("The court[] . . . shall direct the recovery of full costs, including awarding reasonable attorney[] fees to an aggrieved party who prevails.").  The Plaintiff requests $1,500 in attorney fees for six hours of work at $250 per hour, (doc. 38-2 at 2), an amount which other courts involving Communications Act claims brought by this Plaintiff, represented by this counsel, have found reasonable. *See Sports Nut*, 2017 WL 6492546, at *5.  The Court also finds this award to be reasonable.

Turning to costs, the Plaintiff seeks $480 total—$405 to file this action, plus $75 to effect service. (Doc. 38-2 at 2).  The $405 filing fee is due to be awarded as taxable "fees of the clerk." 28 U.S.C. § 1920(1); *see Joe Hand Promotions, Inc. v. Johnny G's LLC*, 2020 WL 7029302, at *6 (M.D. Fla. Nov. 13, 2020), *report and recommendation adopted by* 2020 WL 7024873 (M.D. Fla. Nov. 30, 2020).  The Court also finds that the Plaintiff is entitled to recover $75 for private service of process.[5]

---

[5] Other courts have limited the amount to be recovered for effecting service to the hourly rate charged by the United States Marshals Service Office, which is currently $65. 28 C.F.R. § 0.114(a)(3).  Those courts have done so by conflating the costs to be awarded under § 605 with taxable costs under 28 U.S.C. § 1920. *See, e.g.*, *Johnny G's LLC*, 2020 WL 7029302, at *6.  But § 605 requires courts to award "full costs," not merely taxable costs. *See Zuffa, LLC v. Nguyen*, 2020 WL 6449316, at *4 n.6 (S.D. Fla. July 27, 2020) ("Courts have held that the term 'full costs' as used in [§] 605 includes a broader category of costs than are generally taxable in civil cases pursuant to 28 U.S.C. § 1920.").  The Court thus finds that the Plaintiff is entitled to the full amount it spent to serve the Defendant—its "full costs."

## V.  CONCLUSION

Accordingly, and for good cause, it is

ORDERED as follows:

1.      Plaintiff's motion for default judgment (doc. 38) is GRANTED.

2.      Judgment will be entered in the Plaintiff's favor and against the Defendant on Count I.

3.      The Defendant is liable to the Plaintiff in the amount of $16,980.

4.      Count II is DISMISSED without prejudice.

A final judgment will be entered in accordance with the Court's Order.

The Clerk of the Court is DIRECTED to mail this Memorandum Opinion and Order to the address reflected on the docket for the Defendant.

DONE this 3rd day of November, 2025.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE