IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:24-cv-144-ECM |
| | ) | [WO] |
| BRADLEY MARTIN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

On November 3, 2025, this Court entered a Memorandum Opinion and Order granting the Plaintiff's motion for entry of default judgment against Bradley Martin (the "Defendant" or "Martin") for violations of the Communications Act, 47 U.S.C. §§ 553, 605 (Count I), and awarding the Plaintiff statutory and enhanced damages, attorney fees, and costs. (Doc. 42; *see also* doc. 43 (Final Judgment)).[1] Now pending before the Court is the Defendant's December 3, 2025 motion to set aside the judgment pursuant to Federal Rule of Civil Procedure 60(b). (Doc. 44). For the reasons explained below, the motion is due to be DENIED.

**I.  BACKGROUND**

**A.   Procedural History**

The Court recounted much of the relevant procedural history in its Memorandum Opinion and Order:

---

[1] For clarity, the Court refers to the document and page numbers generated by CM/ECF.

> [The Plaintiff] entered into an agreement with Zuffa, LLC, ("Zuffa") the owner of the copyright for "Ultimate Fighting Championship© 259: Jan Blachowicz vs. Israel Adesanya" (the "Program"), a mixed martial arts event that took place on March 6, 2021. (*Id.* at 2).  That agreement gave the Plaintiff "the exclusive rights to permit commercial businesses . . . to access the broadcast." (*Id.*). . . . The Plaintiff's contract with Zuffa permitted it to "assert claims . . . against unauthorized non-residential [or] commercial establishments" that illegally obtained the Program. (*See* doc. 38-8 at 4).
>
> The Plaintiff brought this suit on March 5, 2024, against two defendants:  RANGE 231 N., LLC ("RANGE"), an Alabama business that operated a commercial establishment in Montgomery, Alabama; and Martin, who the Plaintiff allege[d] "was an officer, director, shareholder, member[,] and/or principal" of RANGE, "had a right and ability to supervise the activities of" RANGE's Montgomery establishment, and "had an obvious and direct financial interest in the activities of" that establishment. (Doc. 1 at 2–3).  The Plaintiff allege[d] that RANGE and Martin accessed the broadcast without obtaining a license and "exhibited the Program for the commercial purpose of attracting paying customers, patrons, members, and guests, thereby wrongfully benefiting financially by infringing [the] Plaintiff's rights." (*Id.* at 4).
>
> The Plaintiff brought claims against RANGE and Martin for violations of the Communications Act . . . (Count I) and for copyright infringement (Count II).  The Plaintiff properly served Martin (*see* docs. 11, 12) and moved for entry of default against him under Federal Rule of Civil Procedure 55(a) (*see* doc. 14), which the Clerk of the Court granted (doc. 20).  However, after twice trying and failing to properly serve RANGE and secure a default against it (*see* doc. 31), the Plaintiff voluntarily dismissed [its] claims against RANGE without prejudice (doc. 35).

(Doc. 42 at 2).  The Plaintiff then moved for default judgment against Martin, the sole remaining defendant, seeking relief purely under the Communications Act. (Doc. 38).  The Court granted that motion on November 3, 2025, (doc. 42) and entered a Final Judgment

2

the same day (doc. 43). On December 3, 2025, Martin moved to set aside the judgment pursuant to Federal Rule of Civil Procedure 60. (Doc. 44).

B.      **Motion for Relief from Judgment**

In support of his motion, the Defendant submitted an affidavit wherein he swears, *inter alia*, that he: (1) owned a bar, "Range 231[ ]N.," but was never affiliated with "RANGE 231 N., LLC"—RANGE; (2) previously purchased Ultimate Fighting Championship ("UFC") viewing through the Plaintiff and discontinued doing so because it was not profitable; (3) contacted ESPN when the UFC moved to ESPN+ and was told that a standard streaming subscription was all his bar needed to show UFC events; (4) did not generate a "significant or reliable" profit from the events but streamed fights because "some patrons" desired to see them; (5) was notified about another lawsuit in 2022 about the same issue that he learned was not handled; (6) was served in June 2024 in the instant case; (7) later received notice that service failed on RANGE and that "the matter was vacated" as to RANGE; (8) does not receive personal mail at the casino address used in the lawsuit and failed to receive many of the filings; and (9) first saw the motion for default judgment on November 6, 2025—three days after the Court granted it. (Doc 44-1 at 1–2). In his motion, the Defendant also asserts that he "had multiple conversations with [the] Plaintiff's counsel before and after these events." (Doc. 44 at 4).

The Defendant asserts that these facts satisfy Rule 60(b)(1) and establish excusable neglect. (*Id.*). To that end, he further states he has the following meritorious defenses: (1) he was never part of RANGE; (2) he previously purchased UFC events from the Plaintiffs lawfully; (3) ESPN told him a standard subscription was sufficient to show UFC events at

3

a commercial venue; (4) events were not a meaningful revenue source; and (5) any alleged violations were inadvertent. (*See id.* at 5).

As to Rule 60(b)(4), the Defendant states that the judgment is void because the Plaintiff sued "the wrong entity and improperly attributed its actions to" him. (*Id.* at 4).

Regarding Rule 60(b)(6), the Defendant states that the following extraordinary circumstances exist in the present case:  (1) misidentification of the Defendant; (2) incorrect instructions from ESPN; (3) reliance on an insurance carrier that abandoned the claim; (4) "a closed business"; (5) a lack of notice due to the wrong address being used; and (6) "no evidence of intentional wrongdoing." (*Id.* at 5).  The Defendant contends that "[t]hese defenses easily meet the low threshold required to justify setting aside a default." (*Id.*).

## II.  DISCUSSION

Under Rule 55(c), the Court "may set aside a final default judgment under Rule 60(b)."  Rule 60(b) sets forth six avenues that justify granting such relief. FED. R. CIV. P. 60(b)(1)–(6).  Three are relevant to the Defendant's motion: Rule 60(b)(1), (4), and (6).  The Court evaluates each of the Defendant's arguments in turn.

### A.     Rule 60(b)(1): Excusable Neglect

Under Rule 60(b)(1), the Court may relieve a party from a final judgment upon a showing of "mistake, inadvertence, surprise, or excusable neglect."  "Excusable neglect is generally an equitable inquiry based upon the particular circumstances of the case." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1355 (11th Cir. 2009) (quoting *Pioneer Inv. Servs. Co. v Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 395

(1993)). To warrant Rule 60(b)(1) relief from a default judgment, the "defaulting party must show that: '(1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint.'" *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003) (quoting *Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993)). Relief under Rule 60(b)(1) is inappropriate here for the following reasons.

Foremostly, the Defendant fails to demonstrate a meritorious defense that might have affected the outcome of the case. His first purported defense is that he was never part of RANGE, the entity dropped from the suit. Nevertheless, he concedes he owns a company that runs the bar "Range 231[ ]N." and does not dispute that the allegations in this case were related to his control and ownership of that establishment. (*See* doc. 1 at 2, paras. 4–5 (stating that RANGE was doing business as "RANGE 231 N. located at 3250 Wetumpka Highway, Montgomery, AL 36110 (the 'Establishment')" and asserting, among other things, that the Defendant "had a right and ability to supervise the activities of the Establishment."). Because the Plaintiff was clear that its suit against the Defendant was due to his ownership or control of the very establishment the Defendant acknowledges he operates, (*see* doc. 44 at 1; doc. 44-1 at 1, para. 2), the Court finds the Defendant's first defense was not a meritorious one that might have affected the outcome of the case. *Cf. Reid v. Trill Ent., LLC*, 2019 WL 13059938, at *2 n.1 (N.D. Ga. Dec. 11, 2019) (noting in denying a motion to set aside an entry of default that "while the incorrect business was named as Defendant, the correct parties had notice of the action.").

5

The Defendant's remaining asserted defenses are fairly characterizable as follows: (1) that previous compliance is a defense to future noncompliance;  (2) permission from a third-party which does not own the rights to license distribution of an event allows a party to distribute that event without obtaining a license; (3) the unprofitability of any showings of unlicensed material weighs against liability; and (4) inadvertence in showing unlicensed material weighs against liability. (*See* doc. 44 at 4–5).

These "defenses" are manifestly not meritorious. *See Worldwide Web*, 328 F.3d at 1296 ("[I]n order to establish a meritorious defense, the moving party 'must make an affirmative showing of a defense that is likely to be successful.'" (quoting *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986))).  First, the Defendant does not provide any authority or argument that any of the above ground are legal defenses to Communications Act violations, and the Court cannot find authority— though it is not tasked with doing so[2]—to support them.

Second, each of the proposed defenses would admit all the elements of Communications Act violations, namely, that the Defendant (1) "intercepted the program," (2) "did not pay for the right to receive the transmission," and (3) "displayed the program to patrons of [his] commercial establishment." *Joe Hand Promotions, Inc. v. Sports Nut, LLC*, 2017 WL 6492546, at *2 (N.D. Ala. Dec. 19, 2017) (quotation omitted)).  The defenses likewise tend to admit vicarious liability under the Communications Act, where

---

[2] "[T]he onus is upon the parties to formulate arguments," *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  A failure to cite authority waives an argument. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n. 13 (11th Cir. 2007) (citations omitted).

"[the] Plaintiff must show that [the Defendant] had a 'right and ability to supervise the violations, and that he had a strong financial interest in such activities.'" *J&J Sports Prods., Inc. v. Arboleda*, 2009 WL 3490859, at *5 (M.D. Fla. Oct. 27, 2009) (quoting *J&J Sports Productions, Inc. v. Ribeiro,* 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008)).

Third, the evidence provided by the Defendant is insufficient to persuade the Court that any of these defenses is "likely to be successful." *Solaroll*, 803 F.2d at 1133. Indeed, the record evidence provided in support of the default and by the Defendant here shows that he did in fact have the right and ability to supervise the violations and had a strong financial interest in doing so. For instance, the Defendant swears to having previously licensed events from the Plaintiff and then ceased to do so because of unprofitability. (Doc. 44-1 at 1, para. 5). He further admits that because of the requests of his patrons, he began to show unlicensed material. (*Id.* at 1, para. 5). In other words, the Defendant's affidavit indirectly demonstrates a strong financial interest in the violations: Avoiding the cost of licensing material while satisfying patrons' requests for the events.

Finally, though inadvertence may be pertinent to the issue of damages—but not violations of the Communications Act, *see* 47 U.S.C. § 605(e)(3)(C)(ii)—the Defendant's affidavit likewise undercuts that the showing of unlicensed material here was inadvertent and not for profit because he swears that he previously purchased licenses from the Plaintiff and ceased to do so because of cost, then began streaming the unlicensed material again at the requests of patrons. (Doc. 44-1 at paras. 3, 5). For that reason, the Court finds that the proposed inadvertence defense is unlikely to be successful and thus is not a meritorious defense.

With regard to the second prong of the Rule 60(b)(1) analysis, though the Defendant has made no showing on the issue, the Court finds there is some—but not substantial—prejudice to the Plaintiff were the Court to set aside the default.

Regarding the third prong, the Defendant has failed to demonstrate a good reason existed for failing to reply to the complaint. The Defendant asserts that he failed to respond because of prior dealings with the Plaintiff, communications with ESPN, insurance handling of an "earlier[,] related case," notice that service had failed as to RANGE, and the failure to receive "critical filings." (*See* doc. 44 at 4). However, the record shows the Defendant was personally served on June 5, 2024, with a complaint by the Plaintiff that named him as a Defendant. (*See id.* at 3, para. 8; doc. 12). The summons plainly read "[a] lawsuit has been filed against you. Within [twenty-one] days after service of this summons on you . . . you must serve on the [P]laintiff an answer to the attached complaint or a motion under Rule 12" and warned the Defendant of the possibility of default judgment should he fail to respond. (Doc. 11 at 1). Defendant states that he immediately contacted counsel, whom he told he was not affiliated with RANGE. (Doc. 44 at 3, para. 8). The Defendant further states he later received another filing, vacating an order *as to RANGE* which caused him to "reasonably believe[] the matter had concluded." (*Id.* at 9). The Defendant then asserts he first saw the motion for default judgment on November 6, 2025, three days after it had been ruled on. (*Id.* at 3, para. 11).

None of this demonstrates a good reason for failing to reply to the complaint. The Defendant was made aware, via service of process on his person, that a lawsuit was filed in which he was a named party and that he had until June 26, 2024, to respond. At that

point, it should have been apparent that whatever prior dealings occurred with the Plaintiff, ESPN, or any third-party insurer did not prevent the filing of a lawsuit naming the Defendant. Moreover, the fact that the Defendant received a filing that some order was vacated *as to RANGE* is not a reasonable basis to conclude the matter had concluded *as to him*. Further, the later filings the Defendant did not receive because he was "rarely present" at the property where he was originally served (doc. 44 at 3, para. 10) are irrelevant to the Defendant's failure to respond *to the complaint* for one year, four months, and five days before the Court issued its Final Judgment. Therefore, the Court finds the Defendant has failed to provide a sufficient reason for failing to respond to the complaint. Because the balance of the equities counsel in favor of denying relief from the judgment under Rule 60(b)(1), the Court finds the Defendant's motion is due to be DENIED in that respect.

**B.      Rule 60(b)(4): Void Judgment**

Rule 60(b)(4) authorizes the Court to relieve a party from a final judgment where "the judgment is void." "[A] void judgment is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final. The list of such infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (citations omitted). Accordingly, "[R]ule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* at 271.

The Defendant argues that the judgment in this case is void because he was never part of RANGE and that the Plaintiff "sued the wrong entity and improperly attributed its actions to [him]." (Doc. 44 at 4).

However, as addressed *supra* Part II(A), this is factually incorrect: The Plaintiff sued both the Defendant *and* RANGE, making clear in the complaint that its claims against the Defendant relied on the fact that the Defendant was responsible for operating "RANGE 231 N. located at 3250 Wetumpka Highway, Montgomery, AL 36110." (Doc. 1 at 2, paras. 4–5). The Plaintiff proceeded to obtain relief solely and directly against the Defendant rather than through the apparently incorrectly-named Defendant RANGE. The Court found it had subject-matter jurisdiction. (*See* doc. 42 at 3). Moreover, the Defendant was served with the complaint and had over a year and four months to respond. Accordingly, this is not one of the "rare instance[s] where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *Espinosa*, 559 U.S. at 271.

To the extent the Defendant's Rule 60(b)(4) argument is based on a personal jurisdiction, service, notice, or opportunity to be heard objection it fails for the following independent reason. The Eleventh Circuit has recognized that Rule 60(b)(4) does not permit a defendant to needlessly wait to make such objections. *See Stansell v. Revolutionary Armed Forces of Colom.*, 771 F.3d 713, 737 (11th Cir. 2014) ("Because [the defendant] knowingly sat on his rights for nine months before filing anything at all with the district court, he waived his right to object to any defects in the service of process or to any denial of his right to be heard." (citing *Espinosa*, 559 U.S. at 275)); *see also Worldwide*

10

*Web*, 328 F.3d at 1299. The Defendant provides no adequate for excuse for his delay here. The Court accordingly finds he has waived these objections for the purposes of Rule 60(b)(4) relief, and his motion is due to be DENIED in that respect.

**C.     Rule 60(b)(6): Extraordinary Circumstances**

Rule 60(b)(6) authorizes the Court to relieve a party from a final judgment for "any other reason that justifies relief." "[R]elief under Rule 60(b)(6) is available only in 'extraordinary circumstances.'" *Buck v. Davis*, 580 U.S. 100, 123 (2017) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)). To warrant relief under Rule 60(b)(6), the moving party must not only show "'sufficiently extraordinary' circumstances," but also that "absent such relief, an 'extreme' and 'unexpected' hardship will result." *Doe v. Drummond Co.*, 782 F.3d 576, 612 (11th Cir. 2015) (citation omitted). "Rule 60(b)(6) does not reward a party that seeks to avoid the consequences of its own 'free, calculated, deliberate choices.'" *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1357 (11th Cir. 2014) (quoting *Ackermann v. United States,* 340 U.S. 193, 198 (1950)).

The Defendant argues that "[c]ourts routinely grant 60(b)(6) relief under far less compelling circumstances" than those discussed above. (Doc. 44 at 5). Not so. *See* 12 JAMES MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 60.48[3][b] (3d ed. 2024) ("In a vast majority of the cases finding that extraordinary circumstances do exist . . . , the movant is completely without fault . . . almost unable to have taken any steps that would have resulted in preventing the judgment from which relief is sought.").

"[R]elief under Rule 60(b)(6) is available only in narrow circumstances. Rule 60(b)(6) is a catchall that follows [(b)(1)–(5)]. It covers 'any *other* reason' that justifies

11

relief; that is, Rule 60(b)(6) provides only grounds for relief not already covered by [(b)(1)–(5)]." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025) (emphasis in original). Further, the Eleventh Circuit "consistently has held that 60(b)(1) and (b)(6) are mutually exclusive," and "[t]herefore, a court cannot grant relief under (b)(6) for any reason which the court *could consider* under (b)(1)." *Solaroll*, 803 F.2d at 1133 (emphasis added). Here, the Defendant recasts his Rule 60(b)(1) claim of excusable neglect as a Rule 60(b)(6) claim. And indeed, he makes virtually the same arguments as to both claims. (*Compare* doc. 44 at 4 *with id.* at 5). Therefore, the Court will not grant relief on this basis.

In any event, the Court is also not persuaded that this case presents the extraordinary circumstances required to warrant Rule 60(b)(6) relief. *See Buck*, 580 U.S. at 123; *Doe*, 782 F.3d at 612. This is especially so because the Defendant, for the reasons discussed *supra* Part II(A), is not faultless in the delay. *See Honickman*, 605 U.S. at 212; 12 JAMES MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 60.48[3][b] (3d ed. 2024)). Thus, the Defendant's motion is due to be DENIED as to Rule 60(b)(6).

### III. CONCLUSION

Accordingly, and for good cause, it is

ORDERED that the Defendant's motion to set aside the judgment (doc. 44) is DENIED.

The Clerk of the Court is DIRECTED to email and mail this ORDER to the addresses indicated in the Defendant's motion (doc. 44 at 6) and the address listed on the docket.

DONE this 12th day of January, 2026.

                                  /s/ Emily C. Marks
                            EMILY C. MARKS
                            CHIEF UNITED STATES DISTRICT JUDGE